WALTER A. MASON *vs.* HENRY H. HUBNER AND T. ROWLAND SLINGLUFF, RECEIVERS.

*Private Sale of Property by Receivers Vacated.*

Under a creditor's bill against a corporation alleging its insolvency, receivers were appointed to take charge of the property of the corporation and to collect outstanding debts, but no authority to make any sales was conferred upon them. The receivers reported a private sale of the real estate of the corporation, to the ratification of which exceptions were filed. The report set forth no reasons why a private instead of a public sale should be made. The trial Court overruled the exceptions, directed an order authorizing the receivers to sell to be entered as of a date prior to the sale reported, and finally ratified the same. The evidence in the case showed that the price obtained at the private sale was less than the market value of the property. *Held*, that under these circumstances the sale should be vacated.

*Decided December 20th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*David Fowler* and *George Whitelock*, for the appellant.

*Fielder C. Slingluff* and *William B. Smith*, for the appellees.

JONES, J., delivered the opinion of the Court.

This case originated in the Court below by the filing of a bill of complaint against the Garrison Park Company of Baltimore City, a corporation, by one of its creditors, alleging that the corportion was insolvent and praying the appointment of a receiver "to take charge of all the books and papers of account, goods and effects, and to collect the debts due to said

defendant and to preserve or dispose of the same under the direction" of the Court. The defendant in pursuance of a resolution adopted by its board of directors admitted in an answer to the bill all the material averments thereof and consented to the appointment of a receiver. Wherupon the Court, on the 10th of March, 1906, passed a decree appointing Henry H. Hubner and T. Rowland Slingluff receivers "with the power and authority to take charge and possession of the goods, wares and merchandise, books, papers and effects of or belonging to the said corporation and to collect the outstanding debts due" thereto; and commanding the "officers, agents and servants" of the corporation to deliver to said receivers such "goods, wares and merchandise, books, papers and effects." The decree then provided that the receivers should give bond in the penalty of five thousand dollars "conditioned for the faithful performance" of their trust.

Subsequent to the decree the Court passed two orders authorizing specific acts by the receivers which have no relation at all to the question presented on this appeal. Other than these the receivers had not asked for nor had the Court passed any special order up to the 20th of April, 1906. There had been no special authority or direction given to the receivers to sell or dispose of the property of the corporation nor of any part of it. The most considerable part of this property consisted of a tract of land of about 46 81-100 acres. On the date last mentioned the receivers reported to the Court that they had sold the whole of this land subject to the operation of two mortgages outstanding against it and aggregating the sum of thirty-eight thousand dollars, to one William R. Beatty for seven thousand dollars; that the terms of sale were "cash to to be paid on the day of ratification," with an adjustment of taxes, interest on mortgages and of certain outstanding contracts affecting minor portions of the land; and that the "sale was fairly and *bona fide* made and for the most money obtainable for the said property." Upon this report the Court passed an order *nisi* "that the private sale of the property * * * be ratified and confirmed unless cause

to the contrary 'should' be shown on or before the 22nd of May, 1906," and directed the usual publication of the order.

On the 19th of May, the appellant "as a creditor of and a stockholder in" the corporation in question filed exceptions "to the ratification of the private sale reported by the receivers"—because the price at which the said sale was reported was inadequate; "because the property should have been sold free from the lien of a second mortgage held by him—and he paid the amount secured thereby out of the proceeds of such sale;" and "for reasons apparent upon the record." The exceptions concluded with a prayer that the Court should not ratify the sale reported but should order sale to be made of the property at public auction. On the 28th of May testimony was taken and heard in open Court upon these exceptions and on the 29th the purchaser filed a petition alleging his purchase at private sale of the property in question; that he had ascertained that the receivers had "failed to obtain the previous order of Court authorizing or directing them to sell; and praying the Court to pass an order directing them to sell the property and that such order be passed as of the 19th of April, 1906. On the same day the Court passed the order from which the appeal here was taken and which is to the effect that the receivers "sell the real estate belonging to the defendant company, and that this order be entered as of the 19th of April, 1906; that the exceptions to the ratification of the sale reported be overruled and said sale be finally ratified and confirmed."

We think the trial Court was in error in passing this order. In the circumstances of the case as disclosed from the record and upon the evidence submitted to that Court ratification of the sale ought to have been refused. In *France on "Elements of Corporation Law,"* sec. 168, it is said of receivers appointed upon the application of creditors alleging insolvency of the defendant corporation, "such a receiver is a mere custodian, vested with no title and having no powers of action or disposition other than those given by the Court appointing him." This is illustrated in the case of *Gaither* v. *Stockbridge*, 67

Md. 222, in which the nature of the office and the powers of such a receiver were subjects of inquiry. In that case the receivers had been appointed upon allegations in the bill of complaint practically identical with those in the bill in the case in which the receivers here were appointed; and under a decree which conferred powers identical with those in the decree which has been herein recited; and it was there held that the receiver was "the ordinary chancery receiver;" that he was "clothed with no estate in the property" but was "a mere custodian of it for the Court" who by special authority might "become an officer of the Court to effect a sale of the property, if that be deemed necessary for the benefit of the parties concerned."

The receivers here then had no such right or interest in, or power over, the property placed in their charge by the original decree as authorized them to make sale thereof without further direction from the Court, and as has been seen, no such direction was given them. It is made the more manifest that at the time of the original decree a sale of the whole real estate was not in contemplation without further direction or authority from the Court, when it is seen that the penalty of the bond prescribed by the decree was much less than this sold for, according to the sale reported, and less as it would seem than it could reasonably have been expected to sell for, to say nothing of the evidence going to show that the price at which it was sold was appreciably below its saleable value. The *nunc pro tunc* order of the Court in connection with the order ratifying the sale was, under the circumstances, but a mere formality and added nothing to the effect of the order of ratification.

The receivers, being without authority to make any sale, reported a private sale with no explanation of why they had made a private instead of a public sale, and with no reasons given for the propriety and advantage of so making the sale. In practice it is usual and proper, when officers of the Court charged with the duty of making sale of property deem it judicious or advantageous to make a private sale for them,

either in a previous application to the Court for authority to sell at private sale, or in the report of such sale, when made without previous authority, to give reasons and facts—with some evidence if the Court so requires—that will enable the Court to act advisedly in respect to the sale so proposed or reported. That the Court should be so advised is eminently proper when such officer comes to ask the ratification of a sale made without authority and without previous direction from the Court to guide his discretion.

The sale here having been made and reported to the Court for its approval, under the circumstances that have been referred to, it was to be expected of the receivers when such sale was attacked as having been unadvisedly made, and for an inadequate price, that they would show to the Court the circumstances which induced their action and the reasons why the Court should ratifiy the same. There is no evidence in the cause to this effect. On the contrary all of the evidence goes to show that the judgment of these officers, in making the sale as they did, was at fault. One of the receivers as solicitor for the exceptant filed the objections to the ratification of the sale that are here being considered; and having been called as a witness on behalf of the respondents below indicated that he was then of the opinion that the receivers had acted unadvisedly in making the sale as they did and that in filing the exceptions in the capacity of solicitor he thought the propriety of the ratification of the sale could be fully brought up for the consideration of the Court. He did not give an opinion of his own as to values but intimated that he now thought the property might have been under valued in the report of sale made. This was the only witness called by the respondents below (appellees here).

Besides the exceptant himself there was produced on his behalf a witness (Mr. Watson) who testified that he was a dealer in real estate; that he had had real estate transactions in the neighborhood of the property involved in this controversy; that he was conversant with values of real estate in that neighborhood; that he had bought property immediately

opposite that here in question; that the value of the property sold by the receivers in this case was from $1,100 to $1,400 per acre; that if it had been put up at auction he would have been prepared to bid on it according to these figures; and that he would so bid if the property were now offered at public auction. Besides this testimony of the witness there was more from him as also from the exceptant, as a witness on his own behalf, going to show that according to property values in the neighborhood of the property in question, the price at which it was reported as sold was below and might be considerably below, what could be obtained for it by selling it at public auction or in a way to bring about competition among buyers. Other than the testimony of the receiver to which reference has already been made the appellees offered no testimony at all. According, therefore, to testimony in the cause entirely uncontradicted the saleable value of the property in question has been put at from about $5,000 to about $20,000 greater than the price at which the sale in this case was reported. The testimony is also to the effect that if the property should again be offered for sale and put up at public auction the price obtainable would range between the figures named in excess of that of the reported sale.

In the absence of countervailing testimony the Court is unable to say that the estimate of value which has been mentioned is exaggerated, and if not exaggerated the Court cannot properly in the light of information for the first time laid before it for its guidance, direct a sale at a price that is greatly below the actual saleable value of the property in question. The sale in question here being a private sale made under the circumstances which have been made to appear the Court will lend a more willing ear to the objections which have been urged against it than it would to like objections to a sale made by authority of the Court and according to directions prescribed. *Latrobe* v. *Herbert et al.,* 3 Md. Chan. Dec. 375–381. The order of the Court below must be reversed with costs and the sale set aside.

*Order reversed with costs to appellant and*
*sale set aside and case remanded.*