WILLIAM SLAUGHTER, Appellee, v. CHARLES A. BURGESON et al., Appellants.

PARTNERSHIP: Articles—Construction—Right of Retiring Partner. Articles of partnership which provide (1) for ''an undistributed profit'' account, as working capital and to pay off loans, (2) for the retirement of partners at their option, and (3) for payment to a retiring partner, in addition to his investment, of profits ''accrued to date of effective withdrawal, figured on basis of going concern,'' entitle a retiring partner to his pro-rata share of the undistributed profit account when there are no outstanding loans.

Headnote 1:   30 Cyc. p. 694.

Headnote 1:   20 R. C. L. 981.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD, Judge.

OCTOBER 26, 1926.

REHEARING DENIED APRIL 7, 1927.

Action in equity to dissolve a copartnership and for an accounting. Decree as prayed. Defendants appeal.—*Affirmed.*

*Naglestad, Pizey & Johnson,* for appellants.

*Edward E. Baron* and *Henderson, Fribourg, Hatfield & Fribourg,* for appellee.

STEVENS, J.—TheAcme Hay & Mill Feed Company, a copartnership having its principal place of business at Sioux City, Iowa, was organized July 1, 1917, by the appellant Charles A. Burgeson·and appellee, William Slaughter. Later, the appellant Martin and one A. L. Smith, not a party to this action, were taken into the firm, and on July 1, 1918, written articles of copartnership were entered into by and between all of the above named parties. Prior to this date, Burgeson and appellee had contributed $9,400 each to the capital of the business. The written articles of agreement fixed the interests of the respective parties in the business as follows: Burgeson and Slaughter $10,000 each, and Martin and Smith $1,500 each. Prior to July 1, 1922, Smith withdrew from.the office, and this controversy is between the remaining parties to the agreement, and involves only the construction of the articles of copartnership. These· articles are somewhat lengthy, and we shall quote only such portions thereof as we deem essential to a clear understanding and disposition of the propositions to be considered:

"14th. The life of the partnership shall continue from year to year unless sooner terminated as hereinafter provided:

"This partnership may be dissolved by concurrent consent of all partners having service with same at such time, and the net assets shall be divided pro rata to all partners on basis of their invested interest.

"Any partner may, if he so desires, withdraw from the partnership by giving the remaining partners thirty (30) days' notice in writing, and the amount of his investment less any losses accrued thereon, if any, shall be paid to him at the expiration of such notice or three months after his withdrawal becomes effective at the option of the remaining partners, providing that such deferred payments shall bear interest at legal rates; such payment shall constitute retirement of invested capital or may be distributed pro rata to present holdings among remaining partners at their concurrent consent. The profits, if any accrued to date of effective withdrawal, shall be figured on basis of a going concern, and shall be paid in similar manner to investment or in installments of three equal amounts each bearing interest to date

of payment at legal rates, payments to commence thirty days after effectiveness of withdrawal and each thirty days thereafter until completed. In any event it is agreed that terms of settlement shall be decided and arranged within thirty days after expiration of withdrawal notice effective date.

"12th. * * * From and after July 1st, 1918, the net profits shall be distributed as follows: When the net profits are between 10 per cent and 11.99 per cent of the total invested capital, there shall be distributed among the partners 7 per cent of their investment; when the net profits amount to 12 per cent to 13.99 per cent of the total invested capital, there shall be distributed among the partners 8 per cent of each partner's investment; when the net profits are 14 per cent or more of the total invested capital, there shall be distributed to each partner 10 per cent of his investment, providing that when the net profits are less than 10 per cent of the total invested capital no part of such profits shall be distributed, except as otherwise provided. The term net profits in each case shall mean the net of each period, and not the total net undistributed from previous periods. All excess profits over the amount distributed to partners shall remain in an undistributed profit account to be used as working funds and especially for the payment of all loan capital, and it is expressly agreed that it shall not be distributed among partners until all loans to the partnership have been paid and a sufficient fund for current working capital has been built up for protection against further borrowing necessities; the sufficiency of such fund to be determined by the past experience and the judgment of Wm. Slaughter and Chas. A. Burgeson."

More than thirty days prior to July 1, 1922, appellee gave each of the partners written notice of his election to withdraw from the partnership on the above date, demanding the return of his investment and a pro-rata share of the property of the concern, including the accumulated and undistributed profits. Appellants refused this demand, and tendered him the amount of his investment, plus $1,000, which was due him on the above date as his pro-rata share of the net profits earned and ready for distribution, under the terms of the contract. Appellee declined to accept the amount tendered, and to accede to appellants' interpretation of the contract, and shortly thereafter commenced this action for the dissolution of the copartnership and

the appointment of a receiver to take charge of its business and property. By mutual agreement between the respective parties, appellee was paid $9,400, the amount of cash actually invested by him in the business, and the request for the appointment of a receiver was abandoned. A trial was had on the remaining issues, resulting in a judgment in favor of appellee for $6,309.45. Appellants do not claim that the amount for which judgment was entered is erroneous if the construction of the contract urged by appellee is adopted by this court.

The particular language of the contract giving rise to the conflicting views of the respective parties is the following:

"The profits, if any accrue to date of witdrawal, shall be figured on the basis of a 'going concern.'"

The emphasis of appellants is placed upon the term "going concern." The agreement clearly contemplates that the withdrawal of a partner shall not operate to dissolve the copartnership, and that the assets and business thereof shall be retained and continued by the remaining partners. To give effect to the contention of appellants, the term "going concern" must be construed as limiting the interest of the withdrawing partner to the amount invested, plus the net profits ready to be distributed under the terms of the contract on the date the withdrawal becomes effective. This construction would mean that the sum accumulated as undistributed profits would belong permanently to the partnership, for the ultimate disposition of which the contract makes no provision. The real purpose for which a certain percentage of the accumulated profits was to be retained by the partnership in the nature of a surplus, is clearly expressed by the agreement. It was to retire loans, and to provide a working capital for the business, which had been profitable from the start. On July 1, 1922, the partnership had no outstanding loans. The term "going concern" refers to an existing solvent business which is being conducted in the usual and ordinary way for which it was organized. *Rothery v. Lowe*, 144 Md. 405 (124 Atl. 868) ; 28 Corpus Juris 712.

For the purpose of the semiannual distribution of profits, the contract provided that:

"The term 'net profits' in each case shall mean the net of each period and not the total net undistributed from previous periods."

The language of the contract is without ambiguity, and cannot be construed so as to deprive a withdrawing partner of his full pro-rata share of the property and accumulated profits of the business.

Manifestly, the term "going concern" was intended to provide a basis upon which the value of a withdrawing partner's interest in the business must be estimated and determined, instead of leaving the same to be estimated upon the basis of a closed business. It is elementary that, upon the dissolution of a copartnership, the net assets of the concern must be divided among the partners according to their respective interests in the concern. That the distribution of the partnership assets may be controlled by the solemn agreement of the parties may, for all the purposes of this case, be readily conceded. The semiannual distribution of a limited portion of the net profits earned during the period was intended as a protection to the partnership, and was, no doubt, a prudent arrangement. It could not, as we interpret the instrument as a whole, have been intended to limit the share or interest of a withdrawing partner in the assets owned by the partnership. The language simply cannot be so construed. This view is to some extent supported by the interpretation placed by the partners upon the contract at the time of Smith's withdrawal from the business. The settlement made with him was upon the basis now urged by appellee. Evidence, however, was introduced by appellants which they claim showed that the settlement with Smith, who was related to one of the partners, was a compromise. The record, however, does not, in our judgment, sustain appellants' claim.

We have not referred in detail to the provisions of the contract quoted above, a careful reading of which leads irresistibly to the construction placed thereon by the trial court. It follows that the judgment of the court below is affirmed.—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.

VERMILION, J. (specially concurring). I concur in the result, and that it is sustained by the construction the parties themselves have put upon the contract.