HAGERSTOWN FURNITURE COMPANY *v.*
CLARENCE H. BAKER ET AL.
[Nos. 5, 21, January Term, 1930.]

576

*Decided March 12th, 1930.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Miller Wingert,* with whom was *William Wingert* on the brief, for the appellant.

*Daniel W. Doub,* for the appellees.

PARKE, J., delivered the opinion of the Court.

These two appeals are presented on separate records which, although incomplete and confused, are together sufficient for a determination of the questions involved without putting the parties to the expense of a writ of diminution. The present controversy grows out of a decree appointing receivers for the Hagerstown Furniture Company, a corporation engaged in the manufacture and sale of furniture at Hagerstown. The company's board of directors were Henry F. Wingert, William Wingert, Lewis P. Wingert, John G. Ernst, and Solomon Baker; and, in the same order in which their names are given, the first four directors respectively filled the offices of president, vice-president, treasurer, and secretary. Baker died in May, 1927, and no one was elected in his place. The

capital stock of the company was $9,000, divided into shares of the par value of $100 each; and sixty of the shares were originally held by the Wingert family, fifteen by Baker's estate, and the remaining fifteen by Ernst. The ownership of the majority of the stock put the Wingerts in full control, and they so abused their position as officers and directors and mismanaged the company's affairs as, upon their own formal admissions in answers filed in the cause, made it necessary for the court to appoint receivers to protect and conserve the resources of the company for the benefit of its creditors and stockholders. The bill of complaint was filed by the executors of Solomon Baker, the dead stockholder, against the company, and later John G. Ernst, the stockholder, The Hagerstown Bank, Victor M. Cushwa, and Clarence H. Baker were made parties plaintiff.

The petition of the new parties disclosed the reasons for their application. Ernst was the owner of ten shares of stock; Clarence A. Baker of eleven shares of stock; Cushwa was the purchaser of ten shares of stock bought by him of the pledgee of the ten shares of stock issued to William Wingert, but for which the president of the company declined to issue the buyer a certificate; and the Hagerstown Bank was the pledgee of the forty shares of stock of Henry F. Wingert, Miller Wingert, Lewis P. Wingert, Martha A. Wingert, to secure a loan by the pledgors of more than $100,000. These four parties approved of the proceedings and intervened to protect their rights and interests.

It further appears that, after the stock was transferred to the Hagerstown Bank as pledgee, and before the filing of the proceedings for a receivership, the bank had a call issued for a special meeting of the stockholders to oust the Wingert directors and elect other officers, but this could not be accomplished, since by statute a pledgee has no right to vote the stock, but the pledgor retains until a sale that privilege. Code, art. 23, sec. 26. The Wingerts, therefore, continued in complete control, although the substantial ownership of the majority of the stock was in other hands. The difficulties

of the subsisting situation were increased by an involuntary bankruptcy proceedings begun against Henry F. Wingert, Miller Wingert, Lewis P. Wingert, and Martha A. Wingert, and now, after an adjudication of bankruptcy, in course of litigation on appeal. These facts, which are here repeated by reason of their pertinency to the present appeals, along with other facts which are not stated, will be found in the decision of this court in *Hagerstown Furniture Company v. Clarence H. Baker and others*, 155 Md. 549. In the case cited the action of the chancellor in appointing a receiver was affirmed, and Judge Pattison thus stated our conclusion: "The Wingerts, serving as directors of the furniture company, having no longer any real interest in its affairs, and having shown a disposition to dispose of its money and funds in the furtherance of their own individual interests, to the loss and injury of the company and its stockholders, we are impressed with the fact that, should the present management be allowed to continue in the control of its affairs, the property and assets of the company will be in imminent danger of loss and injury. Consequently, we cannot escape the conclusion that the order appealed from appointing receivers should be affirmed, in order that those really interested in the welfare of the company, who have asked for their appointment, may be protected in their rights." Pages 562, 563.

The bill of complaint asked for the appointment of receivers to take possession of the corporate property and continue to operate the business under the direction of the court until the corporate property could be sold, and the proceeds applied to the payment of its debts and the residue be distributed among the stockholders. By the decree two receivers were named to take possession of all the property, whether real or personal, of the company, to collect all outstanding debts. due and, until the further order of the court, to conduct the business and maintain the affairs of the company as a going concern.

The receivers selected were two stockholders of the company, Victor M. Cushwa and John G. Ernst, who were not

allied with the Wingerts, but the latter named had been its secretary and had been actively associated in its management during the period in which the company had been successful. From April 16th, 1928, the receivers operated the business. On July 6th, 1928, the chancellor authorized the receivers to borrow the sum of $10,000 on their note, payable in ninety days, with the right of renewal until paid, and made the note and its renewals a lien on the assets of the company; and the receivers so made the loan and used its proceeds to pay taxes and other obligations of the company. The receivers reported to the chancellor on May 22nd, 1929, that they had not been able to run the business at a profit; that it would be unadvisable to continue, because of insufficient capital, business depression, and a failure in demand for the manufactured product; and that they feared a continuation of the business would result in a loss of the existing assets. The receivers stated that, in view of all the circumstances, they believed it would be for the best interest of the creditors and stockholders that a sale of all the assets and a complete liquidation be made, and prayed for an order authorizing a sale as prescribed by the court. Accompanying this verified report was the petition of John G. Ernst, Clarence H. Baker, and the Hagerstown Bank and Trust Company. The petitioners were the actual or substantial owners of seventy-six shares of the stock of the company, and, concurring in the report of the situation by the receivers, they formally consented to the passage of a decree in conformity with the prayer of the petition of the receivers.

On the same day the above mentioned report and petition were filed, the chancellor passed a decree directing the receivers to make the sale requested, without providing that, so far as was practicable, all parties who might be affected by the sale should have notice and be given an opportunity to be heard and show cause why the proposed order should not be passed. Because this order was absolute and not provisory, the company took the appeal which is first in order.

1. Disregarding for the present all other questions, the

one intended to be presented by this appeal will be considered. As appears by the decision of this court on the former appeal, the first decree passed in the cause was to protect and conserve the corporate resources and continue the company's business subject to the further orders of the court. Generally, the situation so created would run until a final decree would be passed determining whether there should be a liquidation of all the assets and a distribution of the net proceeds of sale. However, the principle upon which a court of equity assumed possession of the corporate property and undertook the management of the corporate affairs was not spent, but simply awaited the development of circumstances which would require its further application. So, if it became necessary to sell the property before a final decree is reached, in order to secure assets against depreciation and depletion, a court of equity will again invoke the same principle and direct an immediate sale to preserve the value of the assets for the benefit of all parties, by reducing them to a fund which will remain the constant equivalent in value of the property sold. The general rule is thus stated in *High on Receivers* (4th Ed.), sec. 192: "A court of equity appointing a receiver to take possession of property pending a litigation concerning the rights of the parties thereto is vested with the power of selling the property in the receiver's hands, whenever such course becomes necssary to preserve the interests of all partis." *Miller's Equity,* sec. 615.

It should be noted that this equitable method of the preservation of value in property through a conversion by sale is not to be confounded with the statute authorizing, under specified conditions, a summary method of sale in anticipation of an inevitable final decree to the same effect. The statute was not invoked in this case, but the decisions construing and enforcing it present certain interesting analogies. See *Donohue v. Daniel,* 58 Md. 595, 600, 601; *Cornell & Johnson v. McCann,* 37 Md. 89, 99; *Kelly & Martin v. Gilbert,* 78 Md. 431, 435; *Washington City etc. R. Co. v. Southern Md. R. Co.,* 55 Md. 153, 155; *Dorsey's Lessee v.*

*Garey,* 30 Md. 489, 498; *Dorsey v. Dorsey,* 30 Md. 528; *Title Guar. & Tr. Co. v. Burdette,* 104 Md. 666, 673, 674; *Elkton Electric Co. v. Perkins,* 145 Md. 224, 238, 249-250. And compare *Hammond v. Hammond,* 2 Bland, 306, 359; *Brown v. Wallace,* 2 Bland, 585, 598. If the court did not possess and exercise such power when the occasion arises, and thereby lessen or prevent the loss incidental to the litigation or attendant circumstances, the original assets, instead of being preserved and kept intact, would be much diminished before the rights of the several parties could be adjudicated, and thus the basic reason for creating the receivership would be repudiated in its administration. *Clark on Receivers* (2nd Ed.), secs. 510, 486, 487; *Pomeroy's Equity Jurisprudence* (4th Ed.), sec. 1631; *Smith v. Burton,* 67 Vt. 514; *First Nat. Bank v. Shedd,* 121 U. S. 74, 86; *Mellen v. Moline etc. Works,* 131 U. S. 352, 33 L. Ed. 178, 183, 184; *Syracuse Sav. Bank v. Syracuse, C. & N. Y. R. Co.,* 88 N. Y. 110, 114.

It follows that the court had jurisdiction to sell the assets of the company when necessary to protect the interests of all parties concerned. *Mason v. Hubner,* 104 Md. 554, 556, 557. The necessity for such action rests in the sound legal discretion of the court, and, therefore, upon principle and according to sound practice the interlocutory decree for a sale of all real estate and tangible personalty of a solvent corporation should not have been entered until the court had provided that, so far as was practicable, all persons affected by the proposed sale and not shown to have assented should have notice, and be given an opportunity to be heard and show cause why the sale should not be made. The correct practice is indicated by the order passed in *Deford v. Macwatty,* 82 Md. 168, 169. See *Clark on Receivers* (2nd Ed.), sec. 510; *Forms Nos. 77 & 78,* pp. 1700, 1701, 16 *Encyc. of Forms, Pl. & Pr.* 743; 17 *Encyc. Pl. & Pr.* 833.

The giving of notice and of opportunity for hearing were procedural and not jurisdictional, and, so, subsequent events may correct the error in procedure. *Mellen v. Moline etc. Works,* 131 U. S. 352, 369-370, 33 L. Ed. 178, 184. Thus

if, after the entry of the decree and before the day of sale, a party interpose an objection to the approaching sale, and his objections be heard and proof taken, and the court then dismiss the objection as affording no ground for it to rescind its previous decree, the party objecting can have no complaint on the score of the final form of the interlocutory decree. See *Washington City etc. R. Co. v. Southern Md. R. Co.,* 55 Md. 153, 156, 157. By so giving the objector an opportunity to appear, to offer proof, and be heard, the court has afforded him, while the interlocutory decree is yet ambulatory, every substantial right which would have been accorded him if the interlocutory decree had originally provided for a notice and hearing. Consequently, any initial procedural error becomes of no practical importance, since the objector has sustained no substantial injury. *Middendorf v. Balto. Refrigerating Co.,* 117 Md. 17, 23.

The interlocutory decree was passed on May 22nd, 1929, and required at least three weeks notice of the sale. An appeal was taken in the name of the company on July 22nd, 1929. On July 31st a petition was filed in the name of the company asking for a rescission of the order of sale, and, from a certificate of the chancellor filed in these proceedings, it appears that on the same day the chancellor heard testimony, William Wingert and Miller Wingert testifying for the company, and six other witnesses for the receivers. After the testimony and a hearing, the chancellor refused to rescind the interlocutory decree for the sale. No appeal was taken from this determination. The evidence taken before the chancellor is not on the record, and therefore it must be taken to have afforded no ground for a rescission of the interlocutory decree, and so to have supported his decision.

The court was in custody of the property and in touch with the company's affairs through the receivers. *Gaither v. Stockbridge,* 67 Md. 222, 224, 225. In addition to the mentioned reports of the receivers, the court had before it the inventory and appraisement of all the company's tangible property and a list of accounts receivable, which were filed

in the cause on May 15th, 1928, and had available a financial statement as of January 1st, 1929, that was prepared by the receivers, and showed the assets, debts, bills payable, and accounts receivable. The record then in the hands of the chancellor informed him of the outstanding liens against the property, the assets and liabilities, and the loan of $10,000, obtained by the receivers pursuant to the order of court, and made ‸ lien on all the assets of the company.

The record, therefore, presented a situation which, unless shown by proof to be untrue or misleading, left no choice. The cold logic of diminishing assets through a deterioration and depreciation of equipment for manufacturing, and of constantly amounting liabilities, due to an increase of the original corporate debt by the borrowing of the receivers to provide capital for operation and to the losses incident to the inability of competent receivers to run the business at a profit, together with no prospect of the stockholders effecting a reorganization, made manifest that a sale was imperative for the preservation of the corporate assets, and that immediate action was desirable. The many complications, with the evident litigious disposition of the Wingerts, indicated a prolonged receivership of a business which a court is ill adapted to conduct. *In re Reisenberg (Metropolitan Ry. Receivership)*, 208 U. S. 90, 111, 52 L. Ed. 403. To have vacated the receivership would have restored the evils which the receivership had corrected, and would have been judicial stultification. Moreover, the chancellor was bound to protect the honor of the court by securing the payment of the loan of $10,000, made on the faith of the court's order; and this protection could not be afforded except by a sale of the property. The papers and circumstances are in entire accord with the chancellor's conclusion that a sale was necessary, and relieve this tribunal of any apprehension that the inclusion of the testimony in the printed record would have induced a different finding on appeal. In order to complete the gaps in the record, and to view the case in all its aspects, the court, with the approval of counsel, has examined all the

original equity papers, including particularly the testimony taken before the chancellor on the motion to strike out the order for sale, and finds no substantial cause for dissatisfaction nor basis for this appeal. Instead of any clear abuse of the discretion reposed, the testimony taken unmistakably established that the chancellor's interlocutory decree was necessary for the protection of all the parties interested. The sale actually had the indorsement of the substantial owners of eight-ninths of all the corporate stock, and the court could not permit their property rights to be further jeopardized and dissipated by the factitious objections of a small minority holding.

As a result of the sale the proceeds will constitute a fund in substitution for the property, and all the rights of the parties in interest remain to be declared and enforced against the fund as though the property had not been converted.

2. After the appeal was taken from the interlocutory decree directing a sale, an effort was made to stay the sale by a bond purporting to be given in conformity with section 23, article 5, of the Code. In conformity with the statute, the court fixed the penalty of the bond, which, however, would not suspend the operation of the interlocutory decree unless it were in the prescribed form and approved by the judge or clerk of the Circuit Court for Washington County. The record shows two bonds were tendered. The first was disapproved by the court, and the second was disapproved by the clerk under the court's instructions. The sale of the property as a going concern was made on August 20th, 1929, at public auction, after extensive advertisement. The property was bought by E. A. Corderman for $64,200, and the sale was reported to the court by the receivers. William Wingert, as vice-president, and Lewis P. Wingert, as treasurer, filed in the name of the company an exception to the ratification of the sale. In addition, William Wingert, Lewis P. Wingert, and Miller Wingert, surviving executors of Julia E. Reamer, later filed exceptions. Mrs. Reamer was the sister of the Wingert brothers, and owned ten shares of the stock, which

was the only remaining unpledged stock of the Wingert holdings. Testimony was taken on the first exceptions, and the second exception was set down for hearing. The exceptions set forth a number of alleged grounds dependent upon facts which are not supported by testimony and, as the contention that the interlocutory decree and sale thereunder were invalid has already been considered in this opinion, the only remaining question is whether the court and clerk arbitrarily refused to approve the bonds tendered.

The first bond was in the designated penalty of $6,000, and the sureties were William Wingert, Martha A. Wingert, and Lewis P. Wingert. The corporate seal to this bond was not attested, and the court was advised that the company had not authorized its execution and delivery. This fatal omission was attempted to be corrected by the execution of a second bond, with the same sureties as the first, and with Miller Wingert and a bonding corporation as additional sureties. The vice-president notified the secretary Ernst of a meeting, and he attended, with William Wingert, vice-president, and Lewis P. Wingert, treasurer, the other two directors being dead. The secretary declined to affix and attest the seal, or to have anything to do with the transaction, and the seal was then placed on the bond, and attested by the treasurer. The bond was then presented to the clerk, while the sale was being made, and he declined to approve it. The secretary of the company, John G. Ernst, who refused to join in the execution of the bond, was one of the receivers and, with his co-receiver, had applied for and obtained the interlocutory decree for the sale, and he was actively engaged as receiver in carrying out that decree at the time the Wingert family was engaged in a persistent effort to prevent what Ernst as receiver and stockholder held to be requisite for the preservation of the interests of all parties concerned. While serving as receiver, Ernst could not act as a director, and this left but two directors, who were too few to constitute a quorum for the transaction of business. Supplement to Code, art. 23, sec. 10. For this reason the two directors could not

execute a bond to bind the corporation. Moreover, the court had been formally advised that the real owners of the eight-ninths of the corporate stock had united in the request for the impending sale and, so, knew that the purporting corporate bond was the personal act of the two Wingerts and not that of the company, whose corporate name the two were obviously employing for their individual interests. Under the circumstances, a court of equity could not accept the action of the two Wingerts in signing, sealing, and delivering the bond as a valid corporate act, and the chancellor rightly so directed the clerk. See *Linville v. Hadden & Co.*, 88' Md. 594, 596, 597.

It further appears from the testimony of the clerk and of the representative of the corporate surety that, at the time of the attempted execution and presentation of the bond for approval, there was no documentary evidence of record, nor produced, to establish the agent's authority to execute the bond for the corporation as surety. The bond was, therefore, rightly disapproved, and the order of court dismissing the exceptions and finally ratifying and confirming the sale was properly entered.

The second appeal is from the order ratifying the sale, and was taken by William Wingert and Miller Wingert as attorneys for and in the name of the company. As has been seen, both this and the first appeal, while nominally in the name of the Hagerstown Furniture Company, are actually the appeals of William Wingert and Miller Wingert. To put the costs of these two appeals upon the company would enable these two litigants to escape any financial responsibility for their ill-advised course, and ultimately to impose at least eight-ninths of the expense upon the stockholders whom they are fighting. Whether through design or coincidence, these proceedings have been well timed and multiplied to produce delay, with accompanying loss to every one having any substantial interest in the subject matter, and the court will direct that the costs be placed upon the real litigants.

Waiving the questions presented by the motion to dismiss

these appeals, the court has dealt with all questions having any substance, in order to discover if there were any occasion for a reversal of the decrees. The court has found none, but an examination of the original papers has revealed that the judges in chancery have administered this difficult receivership with care and skill, correcting any premature proceedings by affording to the parties concerned full opportunity for a hearing, modification, or rescission before their consummation, and granting to the objectors every procedural consideration consistent with the due administration of the receivership. In accordance with the views expressed, the decrees appealed from will be affirmed.

> *Decrees appealed from in Nos. 5 and 21 Appeals affirmed, with the costs of both appeals, and of the proceedings in equity incident to these appeals, to be paid by William Wingert and Miller Wingert.*