STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. LINCOLN HAIL INSURANCE COMPANY (CHARLES SMRHA, RECEIVER) ET AL., APPELLEES: F. A. WOOD ET AL., APPELLANTS.

276 N. W. 169

FILED NOVEMBER 12, 1937. No. 30043.

*Albert S. Johnston,* for appellants.

*Richard F. Stout, Jay O. Rodgers, Clinton J. Campbell, Loren H. Laughlin, E. B. Perry* and *John Logan, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and CARTER, JJ.

PER CURIAM.

This is an appeal from the decree and judgment of the district court for Lancaster county entered on August 10, 1936, denying claims for compensation in favor of F. A. Wood and M. Witzenburg, as special agents of the department of insurance of the state of Nebraska, and a judgment entered against such special agents in favor of Charles Smrha, receiver, in the sum of $12,633.56. Included herein is an appeal of F. A. Wood and M. Witzenburg from an order of the district court for Lancaster county, entered on August 12, 1936, approving and confirming the sale and disposition of the assets of the Lincoln Hail Insurance Company to Charles Carr.

These proceedings are the culmination of a course of events which had their inception in the fact that the Lincoln Hail Insurance Company, a corporation organized and existing under the laws of the state of Nebraska relating to assessment hail insurance companies, was, on May 7, 1932, pursuant to the provisions of section 44-204, Comp. St. 1929, by order of the district court for Lancaster county, given into the possession of the department of trade and

commerce, and that department was directed and authorized to take possession of all of its property, records, and effects, and for and in the name of the defendant insurance company to conduct the business of said company as a going concern, and as expeditiously as possible to make a complete examination of the affairs of that company.

This order further directed: "It is further ordered and decreed that, upon the completion of the examination aforesaid and as soon as said department may be advised in the premises, the department make its report herein to this court setting out its acts and doings under the provisions of this decree, and its advice, recommendation and application to this court as to the resumption by the defendant company of the possession of its assets, affairs and business, or the liquidation of the business, as provided in said section 44-204, Compiled Statutes of Nebraska, 1929."

In obedience to the decree last referred to, the examination of this company was completed, a report thereof was duly filed and, by order of the district court for Lancaster county entered on July 27, 1932, was approved, and it was further therein ordered:

"That the department of trade and commerce continue to administer the property and affairs of the defendant company as a going concern pending the next annual meeting of the members of the defendant company, or until further order of this court.

"That the appointment by said department of M. Witzenburg and F. A. Wood as special agents of said department in and for said administration of the property and affairs of the defendant company be and hereby is confirmed."

Necessitated by a legislative amendment to the governing statute, on May 24, 1933, upon an application in behalf of the department of insurance of the state of Nebraska, as the statutory successor to the department of trade and commerce, the former was substituted for and in place of the latter, and M. Witzenburg and F. A. Wood as special agents, now of the department of insurance,

were in effect continued in charge of the Lincoln Hail Insurance Company.

It appears that M. Witzenburg and F. A. Wood from the time of their original appointment in July, 1932, continued in charge of the assets of the Lincoln Hail Insurance Company, carrying on its business and affairs as a going concern without any further authorization or direction from the court which approved their original appointment.

It also appears that these special agents failed to pay hail losses occurring in 1932, and on June 29, 1934, certain policyholders in the Lincoln Hail Insurance Company, who had sustained losses covered thereby in the year, filed in the district court for Lancaster county a petition in intervention, the object and prayer of which was in part to require Lee Herdman (who was the head of the department of insurance) and the defendants M. Witzenburg and F. A. Wood to replace moneys belonging to the company and contained in its loss fund, which it was alleged had been misapplied by them and wrongfully removed from said "loss fund." Thereafter Conn W. Moose, in his official capacity as director of the department of insurance, filed an application in this cause in the district court for Lancaster county, praying for the appointment of himself as receiver of the Lincoln Hail Insurance Company, for the liquidation of that organization as an insolvent company, and that as such receiver he be authorized to collect its assets and make distribution thereof according to law. On September 19, 1935, an order was entered in this cause sustaining this application of Conn W. Moose, and as he had at that time been succeeded in office by Charles Smrha, this order was entered, adjudging that the Lincoln Hail Insurance Company "be, and it is declared to be insolvent and that Charles Smrha be, and he is hereby appointed receiver of the Lincoln Hail Insurance Company," and he was therein as such receiver expressly authorized to take possession of its property of every kind, collect its assets, and liquidate the same. Charles Smrha thereupon gave the prescribed bond, qualified, and entered upon the duties

of his trust. Upon his petition, F. A. Wood and M. Witzenburg were, by the district court, directed to file a report of their acts and doings as special agents in charge of the assets and business of the Lincoln Hail Insurance Company, and an account of all receipts and disbursements by them made as such agents. With this order they complied. To this report by them filed, Charles Smrha, as receiver, filed objections, and certain other parties in interest also filed objections. At this time, Wood and Witzenburg, by proper pleadings, put in issue the allegations of the petition of the intervening policyholders. By a virtual consolidation, the issues thus made by pleadings, including the several objections referred to, were tried to the district court, and evidence was adduced by the parties, and on July 14, 1936, that court entered of record its "Findings on final report of special agents Wood and Witzenburg and objections thereto by the receiver and by the interveners filed June 29, 1934." So far as related to the present appeal, such findings recite, viz.:

"The principal assets of the company were uncollected premium notes. After the defendants Wood and Witzenburg became active as special agents, on July 21, 1932, collections on premium notes were made from that date up to and including October, 1934, in the total sum of $15,267.12, all of which went to the expense account and none of which was deposited in the loss fund.

"Under the provisions of the statute of Nebraska governing this subject one-half of the $15,267.12 or a total of $7,633.56 should have been deposited by the special agents in the loss fund (Compiled Statutes 1929, sec. 44-912). In addition to the foregoing, collections of interest on deposits and other small items were made in the amount of approximately $458.21. * * *

"Funds were transferred from the loss fund in various banks to the expense account, as follows: August 1, 1932, $2,000, January 1, 1933, $1,000, June 1, 1933, $1,000, or a total of $4,000 which was transferred from the loss fund to the expense fund after defendants Wood and Witzenburg

became special agents and apparently said transfers were on their order. On September 3, 1932, $1,000 on deposit in the invested fund in the Farmers State Bank of Saronville was transferred to the expense account."

Thereafter, based upon the above findings, which are fully sustained by the evidence, judgment was entered in favor of the receiver, Charles Smrha, and against F. A. Wood and M. Witzenburg in the sum of $12,633.56.

Later, on August 12, 1936, the district court entered an order directing the sale of the assets of the Lincoln Hail Insurance Company by its duly appointed and qualified receiver, Charles Smrha, to one Charles Carr. To this transaction the appellants also present objections on this appeal.

Preliminary to the consideration of the appeal on its merits, appellants present a "Motion Relating to Parties," which, by its terms, asks dismissal as to certain parties, which would necessarily require the substitution of others, based on the fact that certain appellees who filed their petition of intervention in the district court have, since the institution of this action, assigned and transferred their causes of action.

The Code provision here applicable is: "An action does not abate * * * by the transfer of any interest therein during its pendency, if the cause of action survive or continue. * * * In case of any other transfer of interest, the action may be continued in the name of the original party; or the court may allow the person to whom the transfer is made to be substituted in the action." Comp. St. 1929, sec. 20-322.

Serving no real purpose at the present time, and in no manner affecting the merits of the appeal, this motion relating to parties is denied.

Appellants seek to attack the validity and regularity of the sale of the entire assets of the Lincoln Hail Insurance Company as directed by the district court for Lancaster county by its order of August 12, 1936. However, appellants are not parties in interest. They possess no capacity

to sustain the objections so made. Originally they were appointed and placed in possession of the business, property, and assets of the Lincoln Hail Insurance Company as "special agents" of the department of trade and commerce. By legislative amendment their designation was changed to special agents of the department of insurance. While the appellants formally conformed to the change, it in no manner affected their powers or functions. They were vested with powers analogous to receivers, and as "special agents" they functioned in a similar manner and were in large degree subject to similar limitations.

Whether the assets of a corporation in the hands of a receiver, or in the hands of a special agent exercising the powers of one, should be sold pending final decree to prevent depreciation, depletion or loss is within the discretion of the receivership court. *Hagerstown Furniture Co. v. Baker,* 158 Md. 574, 149 Atl. 556; *Boston Investment Co. v. Pacific S. L. B. Co.,* 104 Ia. 311, 73 N. W. 839; *Cox v. Snow,* 47 Idaho, 229, 273 Pac. 933; High, Receivers (4th ed.) p. 223.

The order, being an order within the discretion of the court to make and enter, suggests the applicability of the further rule that a receiver, or one exercising the powers and performing the functions of a receiver, has no right to appeal from an order within the discretion of the court, for he is neither the censor of the court nor interested in the event. *Bosworth v. St. Louis Terminal R. Ass'n,* 174 U. S. 182; *McKinnon v. Wolfenden,* 78 Wis. 237, 47 N. W. 436. See, also, 23 R. C. L. 133, secs. 141, 142; High, Receivers (4th ed.) p. 313.

It is obvious that statutory special agents of the department of insurance, exercising their statutory powers in their official capacity, may not challenge the validity of an administrative order made by a court of competent jurisdiction, the making of which is clearly within the discretion of such court.

The next contention of the appellants relates to the validity of the judgment entered against them in the sum of $12,633.56.

In this connection it will be remembered that the Lincoln Hail Insurance Company was organized and incorporated under the assessment hail insurance law of Nebraska, and the manner of transacting its business was governed by the provisions of that enactment. Not only are these statutes to be considered as a solemn declaration of the public policy of this state, binding alike upon courts, officials, and litigants, but, in addition thereto, the provisions of such statutes authorizing organization and governing the transaction of its affairs, the articles of incorporation for membership, and the policy issued thereon constitute the contract of membership between the company and those insured by it. *Jensen v. Lincoln Hail Ins. Co.*, 125 Neb. 87, 249 N. W. 94.

One of the statutory provisions thus evidencing the public policy of this state, and constituting a controlling element in all the contracts of insurance entered into by the Lincoln Hail Insurance Company, is the following: "All such associations shall deposit in some bank or banks fifty per cent. of all the assessments or premiums received from its members or policyholders which deposit shall be drawn from said bank for the payment of losses only, and by check or order issued by the treasurer of such association. Each check or order shall designate the name of the policyholder for whose benefit the money is drawn," etc. Comp. St. 1929, sec. 44-912, and as amended by section 44-912, Comp. St. Supp. 1933.

It is also to be noted that possession of the property of this corporation and the rights of the appellants as special agents in charge thereof were derived from and confirmed by the terms of the decree of the district court for Lancaster county entered on July 27, 1932, which, in express terms, provides that the property and affairs of the defendant company (Lincoln Hail Insurance Company) shall continue to be administered "as a going concern pending the next annual meeting of the members of the defendant company, or until further order of this court."

It further appears that this order has never been re-

voked or rescinded, and that said Lincoln Hail Insurance Company was first adjudged insolvent, Charles Smrha appointed receiver thereof, and direction given to liquidate it as such, by order entered in said cause by the district court for Lancaster county on September 19, 1935.

Thus it appears that during the time the appellants were in charge of the affairs of this insurance company they were operating under an express order of the district court for Lancaster county to administer its affairs as a "going concern," with the evident purpose of returning it to the control of its policyholders after the next annual election.

Judicial definition of the term "going concern" is not lacking.

This court has said: "A 'going concern' * * * is * * * some enterprise which is being carried on as a whole, and with some particular object in view." *Oliver v. Lansing,* 59 Neb. 219, 80 N. W. 829.

The term "going concern," when applied to a corporation, means that it continues to transact its ordinary business. The mere fact that a corporation is insolvent does not dissolve the corporation and make the directors mere trustees of its assets, if it is still a going concern. *White, Potter & Paige Mfg. Co. v. Pettes Importing Co.,* 30 Fed. 864.

In *Slaughter v. Burgeson,* 203 Ia. 913, 210 N. W. 553, the supreme court of Iowa, in reference to the proper use of the term, says in part: "The term 'going concern' refers to an existing solvent business which is being conducted in the usual and ordinary way for which it was organized."

Therefore, it is obvious that the order of the district court to the appellants as special agents to administer the affairs of the defendant insurance company as a "going concern" was tantamount to an express direction to conduct its affairs in the usual and ordinary way for which it was organized, with a full compliance with the public policy of the state expressed in the applicable statutes, and the performance of the obligations of its contracts

with its membership as an existing solvent institution. The "loss fund" to which, by statutory requirement, 50 per cent. of premiums and assessments received or to be received by the company were added necessarily constituted a trust fund for the payment of losses incurred under the policies outstanding. The use and application of this fund by these special agents, to the extent of $12,633.56, for unauthorized purposes, as hereinbefore set forth, amounted to a misappropriation, and renders them personally liable to the extent of the moneys so unlawfully diverted and misappropriated. *Sherman v. Harbin,* 124 Ia. 643, 100 N. W. 622; *Sherman v. Harbin,* 125 Ia. 174, 100 N. W. 629.

Statutory agents who, in effect, function in the capacity of receivers are subject to the same liability as judicial receivers for expenditures made by them in violation of statute, and in violation of the positive direction of a court of competent jurisdiction.

It follows, therefore, that the judgment of the district court for Lancaster county in favor of the receiver in the sum of $12,633.56 is, in all respects, correct.

The last matter for our consideration is appellants' challenge to the correctness of the order of the district court rejecting their claims for further compensation. In this connection the language employed by Sedgwick, C. (later a judge of this tribunal), is suggestive. In *Stone v. Omaha Fire Ins. Co.,* 61 Neb. 834, 86 N. W. 468, he says in part: "Assets in the hands of receivers are too often unnecessarily depleted. Receiverships involving large expenses are too frequently protracted for the benefit of officers and attorneys, rather than for the benefit of creditors and other owners of the funds; and, as suggested by the appellee in this case, it is the duty of the court to scrutinize such proceedings closely, and prevent, as far as possible, those practices, which too often bring reproach upon the administration of the law. And therefore the law clothes the court with a large discretion in reviewing the expenses incurred by its receivers."

The claim of Mr. Wood, which the trial court rejected,

was for compensation from January 1, 1934, to September 1, 1934, at the rate of $250 a month, and from January 1, 1935, to date of release (whatever date that may be) at half time, or $125 a month. The claim of Mr. Witzenburg, likewise denied by the trial court, was for compensation at $250 a month from January 1, 1934, to January 28, 1935. The record further discloses that each claimant has already been paid from the assets of the trust the sum of $250 a month from the date of his appointment (July 21, 1932) to January 1, 1934.

The circumstances which surround the performance of the services for which the appellants claim compensation, in addition to the unlawful and improper use of the "loss fund" already herein discussed, disclose that when the insurance company was taken over by the state the "loss fund," derived from 50 per cent. of premiums and assessments theretofore received and which had been set apart and deposited in the special loss fund as the statute directs, aggregated $39,251.22, and the expense fund then amounted to $686.62. This insurance company possessed unpaid premium notes which the evidence indicates aggregated $214,829.43. It then owed one promissory note then outstanding which was well secured by collateral. On or about July 21, 1932, $34,662.41 then constituting the "loss fund" and $566.91 as the balance of the expense fund then on hand were transferred to and received by Wood and Witzenburg. Unpaid premium notes were also delivered to them. On these $15,267.12 was collected. One-half of this amount, under the terms of the statute as well as by order of the trial court, they were required to segregate and deposit in the "loss fund" and use the same only for the payment of policyholders' claims. This duty, however, these "special agents" wholly failed to perform. The hail losses occurring during the year 1932, after this corporation was taken over by the state's representatives, amounted to $34,506.73. The policyholders sustaining these losses were indebted on premium notes to the company in the sum of $15,251.47. It follows that the company's net liability for

hail losses in 1932 was therefore $19,255.26. Notwithstanding the fact that there was received by the representatives of the state a total of $46,633.56 in cash as loss funds, which in a hail insurance business conducted as a going concern was required to be used exclusively in the satisfaction of claims of policyholders for hail losses, no payment whatever was made by the appellants on this $19,255.26 indebtedness. Furthermore, in their last report submitted by appellants as special agents to the district court for Lancaster county, it is disclosed that the total admitted assets (available cash resources of the Lincoln Hail Insurance Company) were $3,460.83, and that the total salary claims and bills accrued against the company amounted to $3,770.88. Thus approximately more than $40,000 of loss funds were unlawfully paid out and dissipated by the special agents, and the plain duties of their trust remain entirely unperformed.

We have already noted that the Lincoln Hail Insurance Company was adjudged insolvent and a receiver appointed therefor on September 19, 1935. Practically from the date of the appointment of these special agents they continuously conducted this business as a going concern, with knowledge of the fact that it was unprofitable and losing money. This these special agents continued until in the natural course of events insolvency intervened. But they in no manner advised the court of competent jurisdiction of the situation as it developed or continued, or sought its instructions in the premises. The rule appears to be, viz.: "If a receiver, without authority so to do, carries on or conducts a business committed to his charge, he is personally liable for any losses sustained therein; and if, being authorized to conduct a business, he is guilty of negligence or mismanagement, or continues to operate the business with knowledge that it is unprofitable or losing money, he is likewise liable in his personal capacity for the resulting loss." 53 C. J. 175. See, also, 53 C. J. 167.

In view of the situation outlined, it is quite obvious that the district court wisely exercised its discretion in the

denial of the claims for compensation here presented on appeal.

The judgments and decrees of the trial court, so far as presented to us on this appeal, are correct, and are

AFFIRMED.