JESSE H. USILTON, HARRY C. CACY AND A. PARKS RASIN, SUPERVISORS OF ELECTIONS OF KENT COUNTY, *vs.* JAMES BRAMBLE, GEORGE E. NOLAND AND JAMES E. MORRIS, A MAJORITY OF THE STATE CENTRAL COMMITTEE OF THE DEMOCRATIC PARTY FOR KENT COUNTY.

*Primary Election Law*: *Acts of* 1910, *Chs.* 741, 249; *tie votes; vacancy; nomination by Central Committee. Official term: commencement of——. Corrupt Practice Act; Ch.* 122, *sec.* 168 *of the Acts of* 1908; *Ch.* 427 *of the Acts of* 1910; *statement by candidates; members of State Central Committee; not public officers.*

Where at an election under the primary election law (Ch. 741 of the Acts of 1910), there is a tie vote between candidates for the same office, a vacancy occurs within the meaning of phrase "by reason of a failure to nominate or otherwise," in the language of section 160к of the statute.          p. 13

Where because of evenly divided votes members of a political party fail to name a candidate at a primary election, the nomination may be made by the governing body of the party.                    p. 13

There is no provision in the law requiring the qualification of the committeemen of the managing bodies of the political

parties after their election, as is generally the case with public officers. p. 14

Where no time is fixed for the commencement of an official term, it begins from the date of the election or appointment. p. 14

Under sec. 80 of Art. 33 of the Code of Public General Laws, a board of county canvassers certified, on August 31st, that certain candidates had received tie votes at a primary election of the 29th of that month: *Held,* that the central committee elected at that primary constituted the new central committee, with the right to designate the nominee to fill the vacancy so created and that the old committee had no longer such right. p. 14

Section 168 of Ch. 122 of the Acts of 1908 (the Corrupt Practices Act) requiring that candidates for public office, at a primary or general election should, within thirty days after election file the written statements as there required, does not apply to candidates for election as committeemen on the managing bodies of the political parties. p. 16

But they are liable to the penalties provided by the act for the illegal use of money, and for the other corrupt practices by the act prohibited. pp. 16-17

Members of the central committees of the political parties are not public officers within the meaning of the statute. p. 16

Even if this section of this act applied to members of a State central committee, such members would have thirty days from their election to file the statements required, dating from the date of their election. p. 16

And such committeemen, elected on August 29, who on September 8 appointed a candidate to fill a vacancy, would not be in violation of the law, merely because the statements referred to had not been filed by them until the day following such nomination. p. 15

*Decided November 22nd, 1911.*

Appeal from the Circuit Court for Kent County (PEARCE, C. J.).

The cause was argued before, BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Lewin W. Wickes* (with whom was *S. Scott Beck* on the brief), for the appellants.

*L. Wethered Barroll* (with whom was *Hope H. Barroll* on the brief), for the appellees.

*A per curiam order was filed on October 6th, 1911, dis-dismissing the appeal, and on November 22, 1911,—*

BOYD, C. J., delivered the opinion of the Court.

At the primary election held August 29th, 1911, James Bramble and John P. Nicholson were amongst the candidates for the nomination by their party for the office of Judge of the Orphans' Court. Two of the candidates were admittedly nominated, but according to the returns Messrs. Bramble and Nicholson received an equal number of votes for the remaining nomination—there being three judges of that Court to be elected at the November election. On the 8th of September two of the three members of the State Central Commitee of the Democratic party for Kent County, who were elected at those primaries, named, designated and appointed Mr. Bramble as the nominee of the party for the office of Judge of the Orphans' Court, and notified the supervisors of election that in accordance with the rules and regulations of the party they had so named, designated and appointed him. The former State Central Committee designated John P. Nicholson as such nominee sometime prior to the Democratic State convention, which met on September 7th, 1911—the members claiming that they constituted the State Central Committee until that convention and until their successors were elected and qualified.

Section 160K of the Primary Election Law provides that "Any vacancy which may exist in respect to any office, delegates to conventions, or position named in this sub-title

occurring after the returns have been canvassed and finally announced or which may exist by reason of there being no candidate for the same in any such primary election *or otherwise,* shall be filled as the rules and regulations of the governing bodies for the respective parties in the counties, city or State may now or shall hereafter provide." That provision is undoubtedly broad enough to include this case, as when there is a tie between two candidates at the primaries there is a vacancy within its meaning, as no one is selected as the nominee for such office or place, and the expression *"or otherwise"* would seem to leave but little room for discussion. A resolution was adopted by the new committee providing for that method of filling a vacancy when there is a tie vote, and there is nothing in the Primary Election Law making special provision for case of a tie vote. As both sides to this controversy pursued the same course, it is not necessary to discuss the question at length, but it may be added that unless the section above quoted is sufficient to permit the governing body of the county to designate the candidate, the political party to which the candidates who received the same number of votes belonged might be placed in the position of having no candidate at the general election for such office. The Primary Election Law certainly does not contemplate such a result, and having given the members of the party the opportunity to name the candidate at the primary election, and they having failed to do so, by reason of the fact that they were equally divided in their choice, the law authorized the nomination by the governing body, which in this case is the State Central Committee of the county.

Section 160A requires political parties subject to its provisions, which the Democratic party is, to elect all delegates to conventions "and all members of managing bodies in said political parties, in and for Baltimore City and the several counties of the State, and all precinct, ward, city and county executives or executive committees, whenever the political party usage provides for such executive committee or any of the same, by means of primary elections, conducted under

and in accordance with the provisions of this act, and not otherwise, except as herein provided." The names of candidates for committeemen are placed on the official ballots to be used at the primaries, are voted for and the result announced and certified as provided by Article 33. The board of supervisors acting as a board of county canvassers meets on the Thursday after the election, and canvasses and adds up the votes and makes abstracts or statements as required by section 80 of Article 33. The board is by section 81 required to then transmit the statements to the clerk of the Circuit Court for the county or of the Superior Court of Baltimore City, as the case may be.

In this instance the Board of County Canvassers met on August 31st, and there can be no doubt that when they declared that Mr. Bramble and Mr. Nicholson had each received the same number of votes the old central committee had no right to fill the vacancy thereby created. The new committee had then been elected, and although there is no express provision as to when they shall enter upon their duties, the rule as to public officers is that where no time is fixed for the commencement of an official term it begins from the date of election or appointment. In the absence of some provision to the contrary, there can be no reason why by analogy the same rule should not apply to committeemen thus elected. There is no provision in the law for such qualification by committeemen as is generally required of public officers, but as the primary law requires committeemen to be elected, it could not have intended that after such election took place the former committee should continue to act in such matters as filling vacancies occurring or existing after the primary election. We are of opinion, therefore, that the newly elected members constituted the State Central Committee on September 8th, 1911, and that their action in then designating James Bramble as the nominee was valid, unless the provisions relied on by the appellant in the Corrupt Practices Act prevented them from then so acting, which we will now consider.

It was contended that the two members of the State Central Committee who designated Mr. Bramble as the nominee had no power to act when they did, because they had not then filed the statement required by section 168 of Chapter 122 of the Acts of 1908, amended by Chapter 427 of the Acts of 1910. The part of that section relied on is as follows: "No person shall be deemed elected *to any elective office* under the laws of this State, or enter upon the duties thereof or receive any salary or emoluments therefrom until he shall have filed the statement and duplicate provided for in this section of this article; and no officer authorized by the laws of this State to issue commissions or certificates of election shall issue a commission or certificate of election to any person claiming to be elected to any office, until such statement as aforesaid shall have been made, verified and filed by such person with such officer."

These committeemen filed statements on September 9th, just one day after they appointed Mr. Bramble, and they could have filed them at any time before September 28th and still have complied with the requirements of that section, if applicable to them, as it authorizes them to be filed within thirty days after the holding of the primary election. They would not therefore have violated the letter or the spirit of the act if this section had been applicable to them, unless it be by reason of the provision which prohibits one amenable to it from entering upon the duties of an elective office until the statement is filed.

But can it be correctly said that section 168 applies to committeemen? It begins "Every *candidate for public office,* including candidates for the office of Senator of the United States, shall within thirty days after the holding of the primary election held to nominate for *such office,* make out and file in the office of the Secretary of State, and a duplicate thereof with the clerk," the statement therein required. Then it goes on to require every *candidate for public office* "within thirty days after the holding of the election to fill *such office*" to file the statement. The part of the section which

we first quoted above begins "no person shall be deemed elected to any *elective office* under the laws of this State," and there are other provisions in that paragraph which could only apply to a public officer, and do not apply to a committeeman, unless it can be said that he is a public officer, which in our judgment he is not, within the meaning of that section. The primary election law itself would seem to settle that question if there should otherwise be any doubt about it. The title and the first section of that statute in terms make the distinction. The title refers to the sections named as "regulating primary elections in the State of Maryland, for all candidates for public office of certain political · parties * * * and to elect delegates to legislative, district, city and State conventions, and all members of managing bodies of certain political parties in and for Baltimore City and the several counties of the State, and all precinct, ward, city and county executives or · executive committees." The first section of the act uses substantially the same language, and the other sections make the same distinction. ·

The primary election law, under which these committeemen were elected, thus in terms makes the distinction between candidates for public office and candidates for membership of managing bodies of political parties, executives or executive committees—indicating that the Legislature did not intend to include committeemen in the expression "candidate for public office," if that expression could otherwise have been said to include them. Manifestly, therefore, when the legislature by section 168 required "Every candidate for public office," at a primary or general election, to file the statement therein provided for, and especially when we see the penalties imposed for not filing it, it can not be so extended as to make it apply to committeemen.

We are, therefore, of the opinion that that section is not applicable to committeemen and they are not required to file the statement named in it, but it must not be understood, however, that they are not subject to any other provisions of the Corrupt Practices Act, for they would be liable to

the penalties prescribed for illegal use of money, etc., and other corrupt practices prohibited, notwithstanding they are not required to file the statement referred to in section 168. If it is thought desirable to require committeemen to do so, the statute can be easily amended to include them.

So without prolonging this opinion by discussing other questions, we will, in accordance with the *per curiam* order already filed, affirm the order granting the mandamus.

> *Order affirmed according to per curiam order heretofore filed, the appellants to pay the cost.*