# BOARD OF APPEALS OF MONTGOMERY COUNTY ET AL. *v.* THE MARINA APARTMENTS, INC.

[No. 14, September Term, 1974.]

*Decided October 25, 1974.*

*Motion for rehearing filed on November 8 and 13, 1974; denied November 13, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Roger W. Titus, Special Legal Counsel for Board of Appeals of Montgomery County,* part of appellants. *Gladys Kessler,* with whom were *Berlin, Roisman & Kessler* and *Norman G. Knopf* and *Richard F. Bondareff* on the brief, for Sheldon S. Cohen and the Citizen's Coordinating Committee on Friendship Heights, part of appellants. *Edward L. Genn* for Friendship Heights Citizens' Committee, other appellant.

*Stephen Z. Kaufman* and *Joseph P. Blocher,* with whom were *Linowes & Blocher* and *R. Robert Linowes* on the brief, for appellee.

*Amicus Curiae* brief filed by Washington Suburban Sanitary Commission, *Paul T. Sisson, J. Lloyd Niles* and *Charles M. Byrd* on the brief, filed at direction of the Court.

DIGGES, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 701 *infra.*

This case involves an embroilment between the appellees, Marina Apartments, Inc., whose largely monolithic desire is to construct a 353-unit high-rise condominium apartment building, and those who are trying to block construction of that building, the appellants—the Board of Appeals of

Montgomery County, Sheldon S. Cohen, Friendship Heights Citizens' Committee, and the Citizen's Coordinating Committee on Friendship Heights. In this confrontation the appellee under our decision is the victor but to understand why we must first set the stage by providing some background facts.

In the spring of 1971, the appellee, in response to its earlier request, received a letter from the Washington Suburban Sanitary Commission (WSSC) which assured it that public water and sewer connections were available for the apartment project that Marina hoped to erect on its 1.4 acre tract located in the Town of Friendship Heights, Montgomery County, Maryland. However, even though Marina, as its architectural and engineering plans progressed, received from the WSSC this and other similar sewer availability assurances, this promised accessibility became somewhat uncertain when the WSSC adopted a resolution in the spring of 1972 imposing a moratorium "on new authorizations for sewer extension" in, among other sewage drainage regions, the Little Falls Basin where Friendship Heights is located. Because of this newly imposed moratorium, Marina became apprehensive that the suspension of sewer permits might affect its previous compact with the WSSC; therefore, it obtained from that Commission a sewer hardship exemption to these discommoding sewer restrictions.

Relying confidently on the pre- and post-moratorium assurances from the WSSC, which culminated in the issuance of a certificate of access, as well as on its success in obtaining all the other necessary preliminary permits by complying with the regulations of the various governmental authorities involved, Marina approached the inspector for the Montgomery County Department of Environmental Protection [1] to acquire his final approval, since only then could it begin the gargantuan task of constructing the

---

1. In 1972, Montgomery County established a Department of Environmental Protection, placing the division of "Licenses and Inspections," including the building inspector, under its control.

above-ground [2] part of the high-rise apartment building. The inspector, after checking the building plans and noting that all of the required permits had been received from the appropriate governmental agencies (including the WSSC certificate), issued the final building permit on January 10, 1973. Once the apartment venture reached this point, the until now silent protestants were impelled to attack the construction of Marina's project by challenging the issuance of this final building permit. This challenge, filed with the Montgomery County Board of Appeals, the administrative agency established by the County to review on appeal the decisions of the building inspector,[3] in part asserted that the granting of the building permit violated § 85-88 of the 1972 Montgomery County Code (to which reference will be made later in this opinion) "because no adequate provision is made for the disposing of the waste, sewage and drainage from the building or structure," as required by that law. The Board agreed with this contention and revoked the permit after concluding that:

> "the building inspector, in issuing the permits, arbitrarily and capriciously failed to carry out his

---

2. Up to this point none of the appellants here had raised any objection to either the issuance of the foundation building permit or the constructing of that foundation.

3. County Boards of Appeals are authorized by the Maryland Code (1957, 1973 Repl. Vol.) Art. 25A, § 5 (U), which grants the charter counties power

> "[t]o enact local laws providing (1) for the establishment of a county board of appeals ... and (4) for the decision by the board ... under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: an application for ... the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, ...."

Pursuant to this Montgomery County enacted legislation delineating the powers, functions and duties of its Board, which is codified in § 2-112 of the 1972 Montgomery County Code, and provides in part:

> "(b) *Hearings under Building Code.* The board shall hear and decide all appeals taken under the Building Code, ... provided, that the authority under the Building Code which is hereby transferred to the board established by this article shall be limited to the hearing and deciding of appeals taken from decisions of the department of inspection and licenses (formerly the inspector of buildings) ...."

responsibility for ascertaining that the project was in conformity with applicable laws and regulations, and, although he had notice of the sewer moratorium, he failed to require that plans be presented to him for adequate provisions for disposing of the waste, sewage and drainage of the proposed structure. . . ."

\* \* \*

"[Further the] Board is of the opinion that the WSSC granted clearance to the Marina Apartment project in violation of applicable laws and regulations; and without taking into account means for adequate disposal of the sewage to be generated thereby."

Realizing that this decision would frustrate its entire effort to build as well as entail a substantial investment loss for the corporation, Marina promptly appealed this Board action to the Circuit Court for Montgomery County. There Judge Walter H. Moorman reversed the action of the Board and reinstated the building permit for the following two reasons:

1. "It is the opinion of the Court that the appeal to the Board of Appeals was commenced by persons who were 'not aggrieved' and therefore the Board of Appeals did not have a proper case before it for decision.

2. "The Court is also of the opinion that the Board of Appeals did not have jurisdiction to hear and decide a case concerning the issuance of a building permit where the disposal of sewage from the building was the basis of the Board's decision."

This circuit court decision prompted the protestants, now joined by a new ally, the Board, to appeal to this Court. As we conclude that Judge Moorman was correct in determining that the Board lacked jurisdiction to reverse the building inspector on the grounds it did, it becomes unnecessary for us to consider the question of standing

which has been raised. Accordingly, for the purposes of this discussion, the standing of at least one of the appellants is assumed. The quintessence of this case then becomes: who has jurisdiction to decide whether there is, in the environs of Montgomery County, adequate sewer capacity for the disposition, without harmful effects on neighboring residents (*e.g.*, sewage backup), of the sewage effluent from the occupied Marina Apartments—the Board, as appellants urge, or the WSSC, as appellee maintains?

The appellants claim that the ultimate power to decide finally whether adequate provision has been made for the disposition of waste from Marina resides in the building inspector subject to review by the Board, because both are empowered by law to do so. This power to be the ultimate arbiter of sewerage decisions is found in, according to the appellants, the building code enacted by the Montgomery County Council, and codified as Chapter 8 of the Montgomery County Code (1972), which adopted by reference, with minor amendments, the BOCA Building Code (1965).[4] Appellants point specifically to § 114.1 of the BOCA Code as the basis for the Board's action in revoking the permit issued by the inspector in this case. That section provides:

> "Action on Application.—The building official shall examine or cause to be examined all applications for permits and amendments thereto within a reasonable time after filing. If the application or the plans do not conform to the requirements of *all pertinent laws*, he shall reject such application in writing stating the reasons therefor. If he is satisfied that the proposed work conforms to the requirements of the Basic Code and *all laws and ordinances applicable thereto*, he shall issue a permit therefor as soon as practicable." (emphasis added).

Appellants correctly construe this statute as giving the

---

4. The BOCA Code was issued by the Building Officials Conference of America, Inc., and was adopted by § 8-26 of the Montgomery County Code.

inspector, and if he fails then on appeal the Board (§ 2-112, *supra,* note 3), the duty and responsibility, before he issues a final building permit, to be certain that the necessary and proper approvals have been obtained from all federal, state or local agencies established to administer rules and regulations concerning construction of a building. However, according to the appellants, the power granted by § 114.1 does not stop here, as they further contend that "compliance with applicable laws other than those enacted by the Montgomery County Council is made an *independent* requirement of *County* law, and noncompliance with such other law is also a violation of County law." [5]

We cannot agree with this inflated interpretation of the county's power in regard to the issuance of building permits, as suggested by the appellants, for while it is true that § 5(T) of Art. 25A (1957, 1973 Repl. Vol.), known as the Express Powers Act, adopted by the Legislature pursuant to Art. XI-A of the Maryland Constitution, grants chartered counties the power

> "to adopt from time to time . . . ordinances and amendments thereof . . . relating to any of the following: . . . the disposal of wastes; . . . the erection, construction, repair and use of buildings and other structures; and to enact local laws providing appropriate administrative and judicial

---

5. The appellants assert that this broad interpretation of § 114.1 requires that the inspector or Board must look behind any permits issued and be satisfied, through their own investigation and without regard for the decisions of the various state and federal agencies involved, that building permit applications "conform to at least three 'pertinent laws' :

(i) . . . [Section 88 of the Laws of Maryland, 1959, Ch. 780, as amended, known as the Regional District Act, and set out for convenience in] Section 85-88 of the Montgomery County Code . . . requiring adequate disposal of sewage.
(ii) . . . Federal Water Pollution Control Act as amended, 33 U.S.C. 1251, *et seq.* . . .
(iii) an air pollution regulation of the Maryland State Department of Health and Mental Hygiene, Section 10.03.39.05D (3)."

> proceedings, remedies, and sanctions for the administration and enforcement of such ordinances and amendments,"

it is, nevertheless clear that ordinances passed under these powers conferred upon the chartered counties (including Montgomery) are local and are circumscribed by the constitutional provision which mandates that in "any conflict between said local law and any Public General Law now or hereinafter enacted the Public General Law shall control." Md. Const., Art. XI-A, § 3. See *Pr. George's Co. v. Md.-Nat'l Cap.*, 269 Md. 202, 306 A. 2d 223 (1973); *Bowie v. Wash. Sub. San. Comm'n*, 249 Md. 611, 241 A. 2d 396 (1968); *Neuenschwander v. Wash. San. Com.*, 187 Md. 67, 48 A. 2d 593 (1946).

We now analyze, in the light of this local law-general law distinction, the authority of Montgomery County and that of the WSSC, in order to determine which one of these two has the superior power to make sewer availability decisions. It is abundantly clear that the WSSC, established for the purposes of coordinating and maintaining the entire public sewer system in the Sanitary District which is largely contiguous to the District of Columbia and operating pursuant to Chapter 122, Laws of Maryland (1918), as from time to time amended, is a creature of the general law as contemplated by the Maryland Constitution, because the Sanitary District encompasses portions of both Montgomery and Prince George's counties. And "[a]ny law so drawn as to apply to two or more geographic subdivisions of this State shall not be decreed a Local Law . . . ." Art. XI-A, § 4. See *Bowie v. Wash. Sub. San. Comm'n, supra* at 616; *Neuenschwander v. Wash. San. Com., supra* at 75. It follows from this that the WSSC's jurisdiction, which it possesses under the Public General Law, to authorize sewer service cannot be countermanded by a board established under local law to enforce a local building code. Therefore, even though § 114.1 adopted by the Montgomery County Code may be interpreted on its face as granting broad power to the County in this sewer availability area, this authority may

not be exercised so as to impinge upon the decisions made by the WSSC under its general law jurisdiction.

It cannot be questioned that the county inspector has a duty to review the building plans so as to determine whether the structure itself complies with the relevant sections of the building code. However, this responsibility as far as sewer availability is concerned is discharged when the inspector is furnished with a sewer connection permit issued by the WSSC; he had no authority or obligation to investigate further as to whether that permit was properly issued by the commission.[6] This is so as the Legislature has created the WSSC and vested it alone with the responsibility, utilizing its expertise, to maintain, enlarge and determine the capacity of a coordinated sewer system in the fast-growing Maryland metropolitan area bordering the District of Columbia. For the county inspector to make an independent inquiry into the decisions the WSSC has made would result in a duplicity of function not legislatively contemplated and would require that each inspector not only be versed in the field of sanitary engineering but also have an intimate familiarity with the entire sewer system owned and operated by the WSSC and its inter-relation with the other sewer authorities in the jurisdictions of Washington, D.C. and Virginia, all this in addition to his other necessary qualifications. In fact, rather than concluding, as the Board did, that the inspector was arbitrary and capricious when he issued the building permit after having viewed, without independently investigating, the WSSC certificate of sewer availability, we think that he would have acted arbitrarily and capriciously had he not issued the final permit.

In an effort to sidestep the clear jurisdictional superiority of the WSSC in regard to sewerage availability decisions the appellants assert that "the legal status of the W.S.S.C. is

---

6. Questioning of a WSSC ruling or decision may be accomplished through a procedural framework established for that purpose, if any, within the Commission itself or through the institution of an appropriate judicial proceeding. However, under § 6-9 of the Washington Suburban Sanitary District Code (1970), as supplemented, challenges to "assessments, tax levies or service charges" adopted by the WSSC are made by appealing to the Public Service Commission of Maryland.

wholly irrelevant" as the Board did *"not* review . . . a decision of the Washington Suburban Sanitary Commission, but rather the decision of a *Montgomery County government building inspector.*" We reject this circumlocutory logic, because the Board cannot be permitted to wield the power indirectly which the law does not permit it to exercise directly. In fact, when the Board, in its written decision, which revoked the final building permit, stated that it was "of the opinion that the WSSC granted clearance to the Marina Apartment project in violation of applicable law and regulations . . ." it stated in effect that, although its action was confined to retracting the inspector's approval, this in all practicality resulted from its independent decision that the WSSC certificate should not have been granted in the first place.

In a further attempt to sway this Court, appellants call our attention to the recently decided case of *Redden v. Montgomery County,* 270 Md. 668, 313 A. 2d 481 (1974), and point out that "[i]t is difficult, if not impossible, to perceive any difference in the jurisdictional sense between *Redden* and the instant case." However, their reliance on that case is misplaced because it is so readily distinguishable. In *Redden,* where a special exception was being sought to a zoning ordinance by the required showing that "existing public services, including . . . sanitary sewer" would not be over-burdened, the proof of sewer availability was attempted only by introducing into evidence a letter from the WSSC which stated that "[w]ater and sewer are available to serve this parcel, and upon proper application, an engineering report will be prepared to determine the conditions under which service will be provided." In determining that this letter was "too frail a reed" in a zoning context to support a decision granting such an exception, we stated, in remanding the case for further proceedings to get a more definitive statement from the WSSC, that:

"We are unwilling to reverse the order of May 25, 1973, upon the ground that the applicants failed entirely to meet their burden of proof in regard to

'overburdening' existing sanitary sewers inasmuch as the language of the WSSC letter of January 25, 1971, in regard to 'availability' might raise possible inferences that if an application for a connection with the existing sanitary sewers were made for the proposed project, it would be granted — although the language of the second paragraph of that letter rather suggests that such a determination has not been presently made but would await an engineering report 'to determine *the conditions* under which service *will be provided*' (emphasis supplied) — and, if granted, the facts in the hands of the WSSC would establish that the proposed use would not overburden the existing sanitary sewers." *Id.* at 683.

In this case Marina does not have such a frail reed upon which to rest, because not only did the appellee have a number of clear assurances by letter from the WSSC but here it had received the final water and sewer connection permit from the Commission—surely a solid rock upon which to stand.

Since the action taken by the Montgomery County Board of Appeals, in deciding that there was an inadequacy of sewerage availability, was beyond its power and jurisdiction, the Board erred in revoking the issuance of the final building permit.

> *Order of the Circuit Court for Montgomery County reversing the decision of the Board of Appeals of Montgomery County and ordering that building permit No. 47047 be reinstated, affirmed.*
> *Each party to pay its own costs.*

*Levine, J., dissenting:*

Finding myself in disagreement with the majority, I respectfully dissent. My reasons for doing so follow.

At the outset, it can not be said — as the court below found, and the majority holds — that the Board of Appeals exceeded its jurisdiction because, in effect, it reversed the WSSC's decision to issue the sewer connection permit. On the contrary, the Board actually said:

> "Although it is clear that the WSSC permit must be obtained before a building permit can be issued, the Board finds no applicable state or local regulation which prohibits the building inspector from exercising his *independent judgment* in fulfilling his obligations under Montgomery County Code, Section [85-88], which requires that plans for adequate provision for disposing of waste, sewage and drainage be presented the building inspector having jurisdiction. Although *the Building Inspector may not validate or invalidate the action of the WSSC,* he and he alone has the final authority for his own decision to issue a building permit or not, . . . ." (emphasis added).

Elsewhere, the Board said:

> "*Neither the Building Inspector nor the Montgomery County Board of Appeals has authority to review the WSSC clearance* in order to take action having legal effect on the WSSC. It is important to keep clearly in mind the distinction between such an administrative review and an inquiry intended to serve as a basis for an independent decision whether or not a building permit should be issued." (emphasis added).

Thus the Board found:

> ". . . that the building inspector, in issuing the permits, arbitrarily and capriciously failed to carry out his responsibility for ascertaining that the project was in conformity with applicable laws and regulations, and, although he had notice of the sewer moratorium, he failed to require that plans be presented to him for adequate provisions for

disposing of the waste, sewage and drainage of the proposed structure. . . ."

In revoking the building permit, therefore, the Board did not reverse the WSSC's issuance of the sewer connection permit, but merely reviewed the building inspector's issuance of the building permit in light of the building code requirement that he issue such a permit only if "satisfied that the proposed work conforms to the requirements of the Basic Code and *all laws* and ordinances *applicable thereto,"* and that if "the application or the plans do not conform to the requirements of *all pertinent laws,* he shall reject such application . . . ." (emphasis added). Marina concedes, as I think it must, that the provision in § 85-88 for "disposing of the waste, sewage, and drainage from the building" is not to be read so narrowly as to mean only disposal from the actual building, but rather that it means removal to an effective treatment location. In any event, the Board merely limited itself, as required by section 8-54 of the County Code, to a determination of whether "such decision or order was made in accordance with the provisions of this chapter [the building code] and *other applicable laws* . . . ." (emphasis added).

I do not agree that the Board exceeded the power conferred upon it by Art. 25A, § 5 (U). The Board acted within the framework of local law, section 8-54 of the County Code, which limits the Board to decisions "made in accordance with the provisions of this chapter [the building code] and *other applicable laws* . . . ." (emphasis added). Furthermore, it was engaged in reviewing the action of the building inspector whose approval of building permits, as previously noted, may be granted only when the application or plans "conform to the requirements of all *pertinent* laws," and who must reject those which do not conform to "the requirements of the Basic Code and *all laws* and ordinances *applicable thereto."* (emphasis added).

The question which then arises under this contention is whether the terms, "other applicable laws," "all pertinent

laws," and "all laws . . . applicable thereto" necessarily refer only to local laws, consistent with the limitations in Art. 25A, § 5 (U), or whether they may also be read to embrace a specific law, such as section 85-88, which, although contained in a comprehensive statutory enactment held to be public general law, is itself applicable solely to Montgomery County. Clearly, I think, the local legislative body, in specifying the jurisdiction of the Board and the building inspector, intended to include such a law if it otherwise met the test of pertinency and applicability, even though it might not qualify as a "local law."

Without attempting to decide what other public general law this might include, if any, in my view it is sufficient to hold that a law which applies solely to Montgomery County, although falling within the category of public general law, and otherwise "pertinent" or "applicable," must be considered by the building inspector in the discharge of his responsibilities under the building code. And for the Board to review his compliance *vel non* with that requirement is not a circumvention of its jurisdictional limitation in § 5 (U).

It must be borne in mind that since the Regional District Act is a public general law, relating in part to the same subject matter as § 5 (U), *i.e.*, building permits, and neither being inconsistent with the other, both should be construed together so that they will harmonize with each other and be consistent with their general object and scope. *Bd. of Fire Comm'rs v. Potter*, 268 Md. 285, 300 A. 2d 680 (1973); *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A. 2d 721 (1972); *Valle v. Pressman*, 229 Md. 591, 185 A. 2d 368 (1962); *May v. Warnick*, 227 Md. 77, 175 A. 2d 413 (1961); *see Prince George's Co. v. McBride*, 263 Md. 235, 282 A. 2d 486 (1971); *Balto. Transit v. Mezzanotti*, 227 Md. 8, 174 A. 2d 768 (1961). This is so even though they were passed at different times and contain no reference to each other. *Bd. of Fire Comm'rs v. Potter, supra; Subsequent Injury Fund v. Chapman*, 11 Md. App. 369, 274 A. 2d 870 (1971), *aff'd mem.*, 262 Md. 367, 277 A. 2d 444 (1971); *May v. Warnick, supra. Cf. Bowie v. Wash. Sub. San. Comm'n*, 249 Md. 611, 241 A. 2d 396 (1968),

where we read the Sanitary Commission law in *pari materia* with relevant provisions of Code Art. 43.

I see no inconsistency or conflict between the legislative determination that the WSSC shall have exclusive jurisdiction over the approval and issuance of sewer connection permits and a local statutory scheme which precludes the building inspector from issuing a building permit "unless adequate provision is made for disposing of . . . waste, sewage, and drainage." The fact that the General Assembly has seen fit to delegate to the WSSC sole authority for issuance of sewer connection permits does not place the county regulatory scheme, applicable to building permits, in conflict with public general law, *cf. Pr. George's Co. v. Md.-Nat'l Cap.*, 269 Md. 202, 306 A. 2d 223 (1973); nor can the Sanitary Commission Act be viewed as a legislative determination that Montgomery County may not, by local law, require adequate sewerage in regulating the issuance of building permits. *See City of Baltimore v. Sitnick & Firey*, 254 Md. 303, 255 A. 2d 376 (1969) and the cases cited therein; *cf. Vermont Fed. S. & L. v. Wicomico Co.*, 263 Md. 178, 283 A. 2d 384 (1971).

For these reasons, I believe that the circuit court erred in ruling that the Board lacked jurisdiction to entertain the appeal from the granting of the building permit. Since the remaining questions raised on appeal from the Board's decision were neither reached by the circuit court nor adequately briefed and argued in this Court, I would remand the case for consideration of the remaining questions without affirmance or reversal.

Judge Eldridge authorizes me to state that he concurs in the views expressed herein.